ESTADO LIBRE ASOCIADO DE PUERTO RICO
TRIBUNAL DE APELACIONES
PANEL V

| MOB ENTERPRISES, LLC. Apelante v. HONORABLE YANIRA RAÍCES VEGA, Secretaria de Educación; HONORABLE DOMINGO EMANUELLI HERNÁNDEZ, Secretario de Justicia Apelados | KLAN202301028 | *Apelación* procedente del Tribunal de Primera Instancia, Sala Superior de San Juan Caso Núm.: SJ2023CV08322 Sobre: *Mandamus* |
|---|---|---|

Panel integrado por su presidente, el Juez Hernández Sánchez, la Jueza Romero García y la Jueza Martínez Cordero.

*Martínez Cordero, jueza ponente*

**SENTENCIA**

En San Juan, Puerto Rico, a 18 de enero de 2024.

Comparece MOB Enterprise, LLC, mediante un recurso de *Apelación* (en adelante, parte apelante o MOB), para solicitarnos la revisión de la *Sentencia* emitida y notificada el 3 de octubre de 2023, por el Tribunal de Primera Instancia, Sala Superior de San Juan (en adelante, TPI).[1] Mediante la *Sentencia* apelada, el Tribunal *a quo* declaró Ha Lugar la *Moción de Desestimación* presentada por la parte apelada.

Por los fundamentos que expondremos, se *confirma* la *Sentencia* apelada.

**I**

El 30 de agosto de 2023, la parte apelante presentó un recurso sobre *Mandamus*, intitulado *Demanda*, contra la Honorable Yanira Raíces Vega, Secretaria de Educación (en adelante, Secretaria de Educación) y el Honorable Domingo Emanuelli Hernández, Secretario de Justicia. Adujo, en síntesis, que producto de la

---

[1] Apéndice I de la parte apelante, a las págs. 1-9.

Número Identificador

SEN2024_____

celebración de la Subasta número 22-2841 (en adelante, Subasta), le fue adjudicado el contrato de servicios de pintura y mantenimiento preventivo para las escuelas del Departamento de Educación, ubicadas en las zonas 6 y 7 (Caguas y Humacao). Arguyó que, conforme a la Ley 149 de 15 de julio de 1999, la parte apelada tiene un deber ministerial de entregarle las aludidas escuelas, así como una lista de las escuelas en las zonas 6 y 7 que requieran los trabajos adjudicados mediante la subasta. Alegó que le ha requerido a la parte apelada la entrega de las escuelas en cuestión y esta se ha negado sin justificación alguna incumpliendo su deber ministerial. Alegó, además, que de las escuelas que entienden requieren los trabajos de mantenimiento y mejoras, solo le han asignado tres (3), pero que, presuntamente, hay un mínimo de treinta y dos (32), constituyendo el 55% de las escuelas ubicadas en las zonas antes descritas.

La parte apelante solicitó como remedio que el foro primario expidiera el auto de *Mandamus* dirigido a la Secretaria de Educación y se le ordenara asignar a la parte apelante las escuelas ubicadas en las zonas 6 y 7 para realizar los trabajos de mejoras y mantenimiento, conforme a la Subasta.

De lo que sigue, el 20 de septiembre de 2023, la parte apelada presentó una *Moción de Desestimación*.[2] Adujo que, luego de evaluar las alegaciones de la *Demanda* y estudiar el derecho aplicable, consideraban que no existía un deber ministerial incumplido por la parte apelada y que la parte apelante no tenía derecho a remedio alguno. Arguyó que la acción presentada era patentemente frívola. En su escrito, expresó que, allá para el 28 de abril de 2022, la Junta de Subastas de la Administración de Servicios Generales del Gobierno de Puerto Rico (en adelante, ASG) emitió una notificación

---

[2] Apéndice 8 de la parte apelante, a las págs. 69-79.

de adjudicación de Subasta bajo el número 22-2841, decretando como licitadores agraciados a trece (13) licitadores que se dedican a la construcción, reparación, rehabilitación, limpieza, mantenimiento y pintura de locales, residencias, edificios y estructuras. Arguyó que de esos trece (13) licitadores, doce (12) de ellos, entre los que se encuentra la parte apelante, tienen autorización para contratar con el Departamento de Educación para las zonas 6 y 7. Lo anterior, y en lo que respecta a la parte apelante, adujo que el Departamento de Educación y MOB suscribieron dos (2) contratos para trabajos en dos escuelas y que los mismos se realizaron. Lo anterior, le permite a MOB poder "participar en los contratos que el Departamento **decida** en el momento que entienda y haciendo uso de su plena y total discreción suscribir para los trabajos necesarios". (énfasis en el original) [3] Por último, esbozó que MOB no tiene un derecho único a participar de los contratos que el Departamento de Educación determine necesarios; sino que comparte este derecho con los otros doce licitadores antes expresados.

Por lo anterior, la parte apelada razonó que el Departamento de Educación no tiene una obligación con la parte apelante, hasta tanto se suscriba algún otro contrato. En su escrito, la parte apelada alegó que la parte apelante no estableció cuál era el deber ministerial incumplido ni expuso la fuente o precepto legal del cual surge el alegado deber ministerial incumplido. Por lo anterior, solicitó como remedio la desestimación de la acción presentada.

Por su parte, el 28 de septiembre de 2023, la parte apelante presentó *Moción en Oposición a Solicitud de Desestimación.*[4] Opuso que, bajo los requisitos y condiciones establecidas en la licitación

---

[3] Apéndice 8 de la parte apelante, a la pág. 71.
[4] Apéndice 9 de la parte apelante, a las págs. 80-85. Véase el Sistema Unificado de Manejo y Administración de Casos (SUMAC) a la entrada 16.

objeto de este caso y por ser la parte apelante una corporación que reúne los requisitos de "Women Owned Small Business", la parte apelada tiene la obligación de asignarle una cantidad mayor de escuelas. En su escrito solicitó que se denegara la solicitud de desestimación y que se concediera el remedio solicitado en la *Demanda.*

En respuesta, el 3 de octubre de 2023, el foro primario emitió la *Sentencia* apelada.[5] Allí, declaró Ha Lugar la solicitud de desestimación presentada por la parte apelada exponiendo que no existe una disposición legal que les obligue a asignarle escuelas adicionales a MOB.

En la *Sentencia,* la primera instancia judicial concluyó varias cosas. Entre ellas, determinó que MOB falló al identificar la disposición legal específica de donde surgía el alegado deber ministerial que interesaba. Dispuso que el análisis y la conclusión a la que llegó la parte apelante en cuanto al alegado deber ministerial incumplido era incorrecto, y expresó que, la razón por la cual MOB solicitó se expidiera un auto de *Mandamus* era para que se obligara a la parte apelada a que se le asignara una cantidad adicional de escuelas y entregarle una cierta lista de escuelas. Dado a lo anterior, el foro primario concluyó que no existía tal deber, catalogado como ministerial, que le impusiera la obligación a la parte apelada de hacer lo que MOB solicitó.

En lo relativo que MOB se trata de una corporación certificada como "Women Owned Small Business", el foro primario razonó que luego de examinar la disposición federal 2 CFR § 200.321, no pudo encontrar dónde estaba el alegado deber ministerial incumplido. Añadió que MOB tuvo la oportunidad de participar del proceso ante la Junta de Subastas de la ASG, fue una de las agraciadas, obtuvo

---

[5] Apéndice I de la parte apelante, a las págs. 1-9.

la correspondiente autorización para contratar con el Departamento para las zonas 6 y 7 y suscribió contratos. Por tanto, el tribunal *a quo* juzgó que se cumplió con la regulación federal. En virtud de lo anterior, la primera instancia judicial resolvió que no existía un deber ministerial incumplido.

El 17 de octubre de 2023, la parte apelante presentó una *Moción Solicitando Reconsideración.*[6] En respuesta, el foro primario emitió y notificó una *Resolución* el 18 de octubre de 2023, en la cual denegó la referida solicitud.

Inconforme con lo dispuesto por el foro primario, el 16 de noviembre de 2023, la parte apelante presentó un recurso de *Apelación* mediante el cual esgrimió la comisión del siguiente error:

> ERRÓ EL HONORABLE TRIBUNAL DE PRIMERA INSTANCIA AL DICTAR SENTENCIA DESESTIMANDO EL RECURSO DE MANDAMUS POR ENTENDER QUE NO EXISTE UN DEBER MINISTERIAL DE LA SECRETARIA DE EDUCACIÓN DE ADJUDICARLE ESCUELAS ADICIONALES A MOB ENTERPRISE, LLC A PESAR DE SER UNA CORPORACIÓN CERTIFICADA COMO WOMEN OWNED SMALL BUSINESS QUE CUMPLE CON LAS DISPOSICIONES DE LA LEY 129 DE 2005[,] CONOCIDA COMO "LEY DE RESERVAS EN LAS COMPRAS DEL GOBIERNO DEL ESTADO LIBRE ASOCIADO DE PUERTO RICO Y SUS ENMIENDAS.

El 27 de diciembre de 2023, compareció el Procurador General mediante *Alegato del Gobierno de Puerto Rico y Solicitud de Desestimación.* Por su parte, el 2 de enero de 2024, la parte apelante presentó una *Moción Sometiendo Documentos y Solicitud [de] Autorización para Presentar los Mismos.* Junto a la misma acompañó el volante de notificación de la *Sentencia* apelada y de la *Resolución* en reconsideración.

Con el beneficio de la comparecencia de ambas partes y luego de haber estudiado la totalidad del expediente judicial ante nuestra

---

[6] Apéndice 5 de la parte apelante, a las págs. 62-65. Véase SUMAC, a la entrada 17.

consideración, así como el derecho aplicable, procederemos a disponer del presente recurso.

**II**

### A. Recurso de Apelación

La Regla 52.2(a) de las Reglas de Procedimiento Civil[7], dispone que los recursos de apelación tienen que presentarse dentro de un término jurisdiccional de treinta (30) días desde el archivo en autos de copia de la notificación de la sentencia recurrida. Como es conocido, un plazo jurisdiccional es de carácter fatal. Ello quiere decir que no admite justa causa, es improrrogable, y que su incumplimiento es insubsanable.[8] La correcta notificación de una sentencia es una característica imprescindible del debido proceso judicial.[9] Como corolario de lo anterior, la Regla 13(A) del Reglamento de este Tribunal establece que:

> Las apelaciones contra sentencias dictadas en casos civiles por el Tribunal de Primera Instancia, se presentarán dentro del término jurisdiccional de treinta días contados desde el archivo en autos de una copia de la notificación de la sentencia.
>
> **En aquellos casos en que** el Estado Libre Asociado de Puerto Rico, **sus funcionarios y funcionarias**, o una de sus instrumentalidades que no fuere una corporación pública, o en que los Municipios de Puerto Rico o sus funcionarios y funcionarias **sean parte en un pleito**, **el recurso de apelación se formalizará**, **por cualquier parte en el pleito que haya sido perjudicada por la sentencia**, **presentando un escrito de apelación dentro del término jurisdiccional de sesenta días**, **contados desde el archivo en autos de una copia de la notificación de la sentencia dictada por el tribunal apelado**. [10] (Énfasis suplido).

No obstante, el término para acudir en alzada puede quedar interrumpido mediante la presentación oportuna de una moción de reconsideración fundamentada.[11] En tal caso, el curso del término para apelar comienza a partir del archivo en autos copia de la

---

[7] 32 LPRA Ap. V, R. 52.2 (a).
[8] *Martínez, Inc. v. Abijoe Realty Corp.*, 151 DPR 1, 7 (2000). *Arriaga v. FSE*, 145 DPR 122, 131 (1998). *Loperena Irizarry v. ELA*, 106 DPR 357, 360 (1977).
[9] *Rodríguez Mora v. García Lloréns*, 147 DPR 305, 309 (1998).
[10] 4 LPRA Ap. XXII-B, R. 13 (A).
[11] 32 LPRA Ap. V, R. 47.

notificación de la resolución que resuelve la moción.[12] Esto, a pesar de que se haya declarado la moción No Ha Lugar.

### B. *Mandamus*

El Código de Enjuiciamiento Civil de Puerto Rico define el auto de *mandamus* como uno altamente privilegiado dictado por el Tribunal Supremo de Puerto Rico, o por el Tribunal de Primera Instancia, a nombre del Gobierno de Puerto Rico, y dirigido a alguna persona natural, a una corporación o a un tribunal judicial de inferior categoría dentro de su jurisdicción requiriéndoles para el cumplimiento de algún acto que en dicho auto se exprese y que esté dentro de sus atribuciones o deberes.[13] Así, el auto de *mandamus* no confiere nueva autoridad y la parte a quien obliga deberá tener la facultad de poder cumplirlo.[14]

De igual modo, el auto de *mandamus* sólo procede para exigir el cumplimiento de un deber impuesto por la ley; es decir, un deber calificado de "ministerial" y que, como tal, no admite discreción en su ejercicio, sino que es mandatorio e imperativo.[15] El deber ministerial que exige el *mandamus* debe emanar de un empleo, cargo o función pública, por lo que el recurso procede contra todos los funcionarios del ejecutivo.[16] Es decir, "no se trata de una directriz o una disposición que permite hacer algo, sino de un mandato específico que la parte demandada no tiene opción para desobedecer".[17] Ahora bien, si el acto en cuestión depende de la discreción o juicio de un funcionario, tal deber se considera como no ministerial.[18]

Para que se logre expedir un auto de *mandamus,* es necesario que exista la constancia de un deber claramente definido que deba

---

[12] *Id.*
[13] 32 LPRA sec. 3421, Art. 649.
[14] *Id.*
[15] *AMPR v. Srio. Educación, ELA,* 178 DPR 253, 263 (2010).
[16] *Noriega v. Hernández Colón,* 135 DPR 406, 448 (1994).
[17] *Carrasquillo Román v. Inst. Correccional,* 204 DPR 699, 713 (2020).
[18] *Romero Lugo, v. Cruz Soto,* 205 DPR 972, 985 (2020).

ser ejecutado.[19] Además, por tratase de un recurso altamente privilegiado, su expedición no se invoca como cuestión de derecho, sino que descansa en la sana discreción del tribunal.[20] Sin embargo, la procedencia del *mandamus* depende inexorablemente del carácter del acto que se pretende compeler mediante dicho recurso.[21] En tal sentido, este recurso extraordinario "sólo procede para ordenar el cumplimiento de un deber ministerial, que no admite discreción en su ejercicio, cuando no hay otro mecanismo en ley para conseguir ese remedio".[22] Asimismo, la jurisprudencia ha discutido que para que proceda un recurso de *mandamus* es necesario lo siguiente:

> que el peticionario le haya hecho un requerimiento previo al demandado para que éste cumpla con el deber que se le exige, debiendo alegarse en la petición, tanto el requerimiento como la negativa, o la omisión del funcionario en darle curso. Sólo se exime de este requisito: 1) cuando aparece que el requerimiento hubiese sido inútil e infructuoso, pues hubiese sido denegado si se hubiera hecho; ó 2) cuando el deber que se pretende exigir es uno de carácter público; a diferencia de uno de naturaleza particular que afecta solamente el derecho del peticionario".[23]

## C. Regla 10.2 de las Reglas de Procedimiento Civil

La Regla 10.2 de las Reglas de Procedimiento Civil regula la presentación de defensas y objeciones a una reclamación judicial.[24] La moción de desestimación al amparo de esta regla es una defensa especial que formula el demandado en la que solicita que se desestime la demanda presentada en su contra, aun sin necesidad de formular una alegación previa.[25]

La regla establece que:

> Toda defensa de hechos o de derecho contra una reclamación se expondrá en la alegación responsiva excepto que, a opción de la parte que alega, las siguientes defensas pueden hacerse mediante una moción debidamente fundamentada:

---

[19] *AMPR v. Srio. Educación, ELA, supra*, a las págs. 263-264.
[20] Id., a la pág. 266.
[21] *Acevedo Vila v. Aponte Hernández*, 168 DPR 443, 455 (2006).
[22] Id., a las págs. 454-455.
[23] *Noriega v. Hernández Colon*, 135 DPR 406, 448-449 (1994).
[24] 32 LPRA Ap. V, R. 10.2.
[25] *Aut. Tierras v. Moreno & Ruiz Dev. Corp.*, 174 DPR 409, 428 (2008). *Colón v. Lotería*, 167 DPR 625, 649 (2006).

(1) falta de jurisdicción sobre la materia;
(2) falta de jurisdicción sobre la persona;
(3) insuficiencia del emplazamiento;
(4) insuficiencia del diligenciamiento del emplazamiento;
**(5) dejar de exponer una reclamación que justifique la concesión de un remedio**;
(6) dejar de acumular una parte indispensable.[26]
(Énfasis suplido)

El tribunal interpretará las alegaciones de la demanda conjuntamente, de forma liberal y de la manera más favorable posible a la parte demandante para determinar si la misma es suficiente para constituir una reclamación válida.[27] No obstante, procederá la desestimación cuando existan circunstancias que permitan a los tribunales determinar, sin ambigüedades, que la demanda carece de todo mérito o que la parte demandante no tiene derecho a obtener algún remedio.[28]

Por su parte, los tribunales deben evaluar el posible impacto que éste pueda tener sobre los intereses públicos involucrados; evitar una intromisión indebida en los procedimientos del poder ejecutivo, y que el auto no se preste a confusión o perjuicio de los derechos de terceros.[29]

### D. Ley Núm. 149-1999

La Constitución de Puerto Rico consagra el derecho de toda persona a una educación que propenda al pleno desarrollo de su personalidad.[30] La Ley Núm. 149 del 15 de julio de 1999, según enmendada, Ley Orgánica del Departamento de Educación de Puerto Rico, fue derogada y sustituida por la Ley Núm. 85 de 29 de marzo de 2018, según enmendada, Ley de Reforma Educativa de Puerto Rico. Entre los propósitos de la Ley Núm. 149-1999 se encuentra establecer un sistema de educación pública libre, sin ninguna inclinación sectaria y gratuito en los niveles primario y

---

[26] 32 LPRA Ap. V, R. 10.2.
[27] *Torres, Torres v. Torres et al.*, 179 DPR 481, 501 (2010). *Pressure Vessels PR v. Empire Gas PR*, 137 DPR 497, 505 (1994).
[28] *González Méndez v. Acción Social et al.*, 196 DPR 213, 235 (2016).
[29] *AMPR v. Srio. Educación, E.L.A., supra*, a la pág. 268.
[30] Art. II, Sec. 5, Const. PR, LPRA, Tomo 1.

secundario.[31] Dicha Ley les confiere autonomía a las escuelas como una garantía de estabilidad en la gestión educativa.[32]

Esta legislación le otorgó una serie de facultades y obligaciones al Secretario de Educación entre las cuales se destaca el aprobar "los proyectos y planos de construcción de planteles escolares y otras instalaciones del Sistema y [controlar] las obras de construcción o mejoras de las mismas con empresas públicas o privadas" y celebrar "contratos para la construcción y reacondicionamiento de planteles escolares y edificios del Departamento".[33]

### E. Legislación para fomentar la contratación de pequeñas empresas con el gobierno.

El 7 de octubre de 2005 se aprobó la *Ley de Reservas en las Compras del Gobierno del Estado Libre Asociado de Puerto Rico*.[34] La referida legislación, se fundamentó en el modelo utilizado por el gobierno federal para compra de productos y servicios a ciertos sectores productivos de la economía.[35] En tal sentido, este estatuto estableció como política pública del Gobierno de Puerto Rico "asignar un veinte por ciento (20%) del total de la partida certificada a compras de su presupuesto general para ser otorgado a microempresas, pequeñas y medianas empresas, siempre que la situación fiscal así lo permita o produzca ahorros al fisco".[36] Asimismo esta ley establece que:

> Las instrumentalidades del Gobierno de Puerto Rico deberán adjudicar la mitad del antedicho veinte por ciento (20%) a mujeres empresarias propietarias de microempresas, pequeñas o medianas empresas, según definido en la presente Ley, siempre que dicha adjudicación sea beneficiosa al erario público, y que cumpla con los requisitos legales aplicables.[37]

---

[31] Ley Orgánica del Departamento de Educación de Puerto Rico, Ley Núm. 149 de 15 de julio de 1999, según enmendada, 3 LPRA sec 143a nota, Art. 1.02 (a) (Ed. 2017).
[32] *Id.*
[33] *Id.*, sec. 145u.
[34] 3 LPRA sec. 8641 et seq.
[35] Véase la Exposición de motivos de *Ley de Reservas en las Compras del Gobierno del Estado Libre Asociado de Puerto Rico*, Ley 129-2005.
[36] 3 LPRA sec. 8641 nota.
[37] *Id.*

Por otro lado, en el ámbito federal, existe el capítulo 2 del Código de Regulaciones Federales (CFR por sus siglas en inglés) en su sección 200.321 el cual establece los lineamientos para contratar con pequeños comerciantes y empresas dirigidas o pertenecientes a mujeres. En ese sentido, la aludida disposición establece lo siguiente:

(a) The non-Federal entity must take all necessary affirmative steps to assure that minority businesses, women's business enterprises, and labor surplus area firms are used when possible.
(b) Affirmative steps must include:
(1) Placing qualified small and minority businesses and women's business enterprises on solicitation lists;
(2) Assuring that small and minority businesses, and women's business enterprises are solicited whenever they are potential sources;
(3) Dividing total requirements, when economically feasible, into smaller tasks or quantities to permit maximum participation by small and minority businesses, and women's business enterprises;
(4) Establishing delivery schedules, where the requirement permits, which encourage participation by small and minority businesses, and women's business enterprises;
(5) Using the services and assistance, as appropriate, of such organizations as the Small Business Administration and the Minority Business Development Agency of the Department of Commerce; and
(6) Requiring the prime contractor, if subcontracts are to be let, to take the affirmative steps listed in paragraphs (1) through (5) of this section.[38]

De la misma manera, el *Small Bussines Administration* también atienden el asunto de contratación de empresas dirigidas por mujeres con entidades gubernamentales.[39]

### III

Ante nuestra consideración se encuentra un recurso de *Apelación* para revisar una *Sentencia* mediante la cual se desestimó la causa de acción presentada por MOB. En su único señalamiento de error, MOB nos invita a concluir que el foro primario incidió al haber desestimado el recurso de *mandamus*. Así pues, señaló que la primera instancia judicial erró al desestimar bajo la premisa de

---

[38] 2 CFR sec. 200.321.
[39] Véase, 15 USC sec 637 (m).

que no existe un deber ministerial de la Secretaria de Educación de adjudicar escuelas adicionales a MOB a pesar de ser una corporación certificada como Women Owned Small Business que cumple con las disposiciones de la Ley 129-2005. Veamos.

En primer lugar, es necesario examinar, si en efecto se cumplió con los requisitos para expedir el recurso extraordinario de *mandamus*. Como reseñáramos, el elemento esencial para determinar la expedición de un *mandamus* es auscultar si la parte demandada está incumpliendo con un deber ministerial.[40] Para ello, es necesario que la parte que solicita el *mandamus*, exponga el deber cuyo cumplimiento se requiere mediante este recurso, el cual debe estar **dentro de las atribuciones o deberes que la ley le impone al funcionario**.[41] Asimismo, es necesario que **el derecho del promovente y el deber del demandado deben surgir en forma clara y patente**.[42] Una vez el foro judicial determine la existencia del incumplimiento de un deber ministerial, es necesario examinar el posible impacto que el auto pudiera ocasionar al interés público.[43]

Conforme surge del expediente, en su *Demanda,* MOB aduce que la Secretaria de Educación tiene la responsabilidad de cuidar y mantener las instalaciones de las escuelas públicas de Puerto Rico. De esta forma, la parte apelante plantea que dicha responsabilidad emana de la Ley 49-1999, por lo cual representa un deber ministerial. En ese sentido, MOB sostiene que para cumplir tal deber ministerial es necesario que la Secretaria de Educación le entregue escuelas adicionales para ser trabajadas y de igual manera le entregue un listado de escuela que requieren mejoras y mantenimiento.

---

[40] *AMPR v. Srio Educación, ELA, supra,* a la pág. 263.
[41] *Hernández Agosto v. Romero Barceló,* 112 DPR 407, 418 (1982).
[42] *Id.*
[43] *AMPR v. Srio Educación, ELA, supra,* a las págs. 268-269.

Tal y como discutiéramos, un deber ministerial es un "mandato específico que la parte demandada no tiene opción para desobedecer".[44] No obstante, de una lectura de los estatutos a los cuales la *Demanda* hace alusión, no hallamos ninguna disposición que establezca una obligación a la parte apelada a tener que entregar escuelas adicionales o entregarle una lista de escuelas a esta compañía. La Ley 49-1999 versa sobre el mantenimiento de los planteles escolares. Sin embargo, dicha responsabilidad no se incumple con el hecho de no concederle escuelas adicionales a MOB. De hecho, conforme surge del expediente, existen otras doce (12) compañías que también están adscritas a las zonas en las cuales MOB trabaja y dichas empresas realizan funciones similares a las que ejecuta la parte apelante.

De igual modo, la Ley de Reservas en las Compras del Gobierno del Estado Libre Asociado, así como la regulación federal contenida en el 2 CFR sec. 200.321 establecen una política, **que siempre que sea factible** se contrate o colabore con pequeñas empresas o empresas dirigidas o pertenecientes a mujeres. Nótese que esto tampoco es un deber ministerial, ya que el lenguaje de ambas legislaciones no le impone un mandato al Gobierno de asignar escuelas adicionales para dar por cumplido el texto de dichos estatutos.

En fin, dado a la ausencia de un deber ministerial que se ha incumplido, no procede la causa de acción incoada por MOB. Recordemos que el auto de *mandamus* es un recurso altamente privilegiado. La parte apelante no logró constatar un deber claramente definido en la legislación a la cual hizo referencia. Por tal motivo, la moción de desestimación presentada por la parte apelada procedía toda vez que en este pleito MOB dejó de exponer

---

[44] *Id.*, a la pág. 263.

una reclamación que justificara la concesión de un remedio. Por ello, a tono con el análisis que antecede, colegimos que el error formulado por la parte apelante no se cometió y, en consecuencia, corresponde confirmar la sentencia apelada.

**IV**

Por los fundamentos que anteceden, se *confirma* la *Sentencia* apelada.

Lo acordó y manda el Tribunal, y lo certifica la Secretaria del Tribunal de Apelaciones.

Lcda. Lilia M. Oquendo Solís
Secretaria del Tribunal de Apelaciones